UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEREMY MEYERS, individually, and
on behalf of all others similarly situated,

        Plaintiff,

    v.                                  Case No. 15-CV-445

ONEIDA TRIBE OF INDIANS OF WISCONSIN,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

      Plaintiff Jeremy Meyers filed this proposed class action against the Oneida Tribe of Indians of Wisconsin (the Tribe) alleging that on three occasions in February 2015, establishments owned and operated by the Tribe printed receipts displaying more than the last five digits of Plaintiff's credit card number and the expiration date, in violation of the Fair and Accurate Credit Transactions Act (FACTA) amendment to the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681c(g)(1). The Tribe has moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). As explained below, the motion to dismiss will be granted.

      The Tribe argues that Plaintiff's claims are barred under the doctrine of tribal sovereign immunity and that Plaintiff has not suffered an "injury in fact" as required to satisfy the standing requirement of Article III of the Constitution. The immunity issue is technically not a jurisdictional one in the Seventh Circuit, *see Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008); *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 980 F. Supp. 2d 1078, 1084–85 (W.D. Wis. 2013), but the court can treat the Tribe's Rule 12(b)(1) motion as a

motion to dismiss for failure to state a claim under Rule 12(b)(6). *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). Where, as here, the immunity issue is clearly raised by the facts in the complaint, it can be addressed at the pleading stage. *See Brooks v. Ross*, 578 F.3d 574, 579–80 (7th Cir. 2009).

That Indian tribes are generally immune from suit is well-settled. *Michigan v. Bay Mills Indian Community*, --- U.S. --- , 134 S.Ct. 2024 (2014) (re-affirming that tribal immunity applies even to off-reservation commercial conduct). The Supreme Court has "time and again treated the doctrine of tribal immunity [as] settled law and dismissed any suit against a tribe absent congressional authorization (or a waiver)." *Id.* at 2030–31 (quotations omitted). As the Court explained in *Bay Mills*:

> Our decisions establish . . . that such a congressional decision must be clear. The baseline position, we have often held, is tribal immunity; and [t]o abrogate [such] immunity, Congress must "unequivocally" express that purpose. That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government.

*Id.* at 2031–32 (internal quotations and citations omitted). Moreover, because of the "unique trust relationship between the United States and the Indians," ambiguous statutes are supposed to be interpreted in favor of immunity. *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–44 (1980) ("Ambiguities in federal law have been construed generously in order to comport with these traditional notions of sovereignty and with the federal policy of encouraging tribal independence.").

FCRA was enacted in 1970. The law was amended in 1996 to authorize damages against any "person" who negligently or willfully failed to comply with its provisions. Pub. L. No. 104-108,

2

§ 2412 (amending 15 U.S.C. § 1681n). "Person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). In 2003, Congress enacted the "truncation requirement" Plaintiff invokes, which provides: "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." FACTA, Pub. L. No. 108-159, § 113 (creating 15 U.S.C. § 1681c(g)(1)).

Notably absent from this legislative scheme is any reference to Indian tribes. Congress did not specifically list Indian tribes in the list of entities considered "persons" under § 1681a(b). There is little doubt that Congress knows how to abrogate tribal immunity. *See, e.g.*, *United States v. Weddell*, 12 F. Supp. 2d 999 (D.S.D. 1998) (finding unequivocal abrogation of tribal immunity because Fair Debt Collection Practices Act's definition of "person" included "a natural person (including an individual Indian), a corporation, a partnership, an unincorporated association, a trust, or an estate, or any other public or private entity, including a State or local government or an Indian tribe."); *cf. In re Greektown Holdings, LLC*, 532 B.R. 680, 698–99 (E.D. Mich. 2015) ("There is not a single example of a Supreme Court decision finding that Congress intended to abrogate the sovereign immunity of the Indian tribes without specifically using the words 'Indians' or 'Indian tribes.'").

Nevertheless, Plaintiff argues FCRA's definition of "person" is broad enough. Plaintiff relies on *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014), where the Seventh Circuit found the same definition evinced Congress's "unequivocal" intent to waive the United States' sovereign immunity

3

from suit. In *Bormes*, the court wrote: "By authorizing monetary relief against *every* kind of government, the United States has waived its sovereign immunity." *Id.* at 795 (emphasis in original). To the extent the court implied that other sovereigns (besides the United States) would not be entitled to immunity in view of this definition of person, the implication was clearly dicta, as the case only addressed whether Congress unequivocally waived the United States' immunity. On the issue of tribal immunity, *Bormes* is distinguishable. It is one thing to say "any government" means "the United States." That is an entirely natural reading of "any government." But it's another thing to say "any government" means "Indian tribes." Against the long-held tradition of tribal immunity discussed above, "any government" is equivocal in this regard. Moreover, it is one thing to read "the United States" when *Congress* says "government." But it would be quite another, given that ambiguities in statutes are to be resolved in favor of tribal immunity, to read "Indian tribes" when Congress says "government."

Plaintiff also relies on *Kryztal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004), in which the Ninth Circuit allowed an adversary action against an Indian tribe in a bankruptcy proceeding. Section 106 of the Bankruptcy Code provides: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section . . . ." 11 U.S.C. § 106(a). "Governmental unit" is in turn defined as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; *or other foreign or domestic governments*. . . ." 11 U.S.C. § 101(27) (emphasis added). In *Kryztal Energy* the Ninth Circuit held that the language "other foreign or domestic government" was sufficient to unequivocally express Congress' intent to

4

abrogate tribal immunity from suit in adversary proceedings under the Bankruptcy Code.

But *In re Whittaker*, 474 B.R. 687 (8th Cir. BAP 2003), went the other way with the Bankruptcy Appellate Panel for the Eighth Circuit concluding that Congress did not unequivocally express its intent to abrogate tribal sovereign immunity in adversary actions under the Bankruptcy Code. In *Whittaker*, the Eighth Circuit Bankruptcy Appellate Panel noted that the legislative history of the Bankruptcy Code provided no evidence that Congress even considered the effect of § 106 on tribal sovereign immunity:

> Indeed, despite the fact that *Santa Clara Pueblo* was decided six months before the 1978 Bankruptcy Code was enacted and held that abrogation of tribal sovereign immunity must be "unequivocally expressed," Congress did not mention Indian tribes in the statute. Nor did it do so in 1994 when it amended § 106 to clarify its intent with respect to the sovereign immunity of states following *Hoffman v. Connecticut Department of Income Maintenance* and *United States v. Nordic Village, Inc.*, which held that former § 106(c) did not state with sufficient clarity a congressional intent to abrogate the sovereign immunity of the states and the federal government. Indeed, the House Report for the Bankruptcy Reform Act of 1994 refers specifically to the sovereign immunity of the "States and Federal Government," neither of which could even remotely be interpreted to include Indian tribes.

474 B.R. at 693 (footnotes omitted). The Bankruptcy Appellate Panel also rejected the Ninth Circuit's conclusion that the term "domestic governments" could naturally be read to include Indian tribes. In fact, the Panel noted that the Supreme Court had never referred to tribes in such terms:

> While the Supreme Court did say in that case that Indian tribes are a form of "domestic sovereign," it is noteworthy that the Supreme Court did not refer to Indian tribes as "domestic governments," which is the phrase used in § 101(27). Indeed, while the Supreme Court has referred to Indian tribes as "sovereigns," "nations," and even "distinct, independent political communities, retaining their original natural rights," the trustees cite no case in which the Supreme Court has referred to an Indian tribe as a "government" of any sort—domestic, foreign, or otherwise. The apparent care taken by the Supreme Court not to refer to Indian tribes as "governments" reinforces Justice Marshall's pronouncement in *Cherokee Nation* that Indian tribes are exceptionally unique, unlike any other form of sovereign, which is why he coined the phrase "domestic dependent nation." If the Supreme Court

5

considered an Indian tribe to be a "government," it would not go to such great lengths to avoid saying so.

474 B.R. at 695 (footnotes omitted); *see also In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D.Mich. 2015). I find the analysis of the Panel in *Whittaker* more persuasive than that of the Ninth Circuit and therefore reject Plaintiff's contention that the phrase "any government" unequivocally includes Indian tribes.

Finally, relying on *Smart v. State Farm Ins. Co.*, 868 F.2d 929 (7th Cir. 1989), Plaintiff argues that applying the doctrine of tribal immunity "ignores well-settled law that Indian Tribes are not immune from federal laws of general applicability." (ECF No. 17 at 2.) But the question here is not whether the Tribe is subject to FCRA; it is whether Plaintiff can sue the Tribe for violating FCRA. *See Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1130 (11th Cir. 1999) ("[W]hether an Indian tribe is subject to a statute and whether the tribe may be sued for violating the statute are two entirely different questions."); *see also Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 755 (1998) ("There is a difference between the right to demand compliance with state laws and the means available to enforce them."). *Smart* involved a suit by a tribe member against an insurance company and the issue was whether ERISA governed an employee benefits plan established by a tribe. 868 F.2d at 932. No tribe was sued, and thus the question of tribal immunity was not addressed. Plaintiff's reliance on *Smart* is therefore not persuasive.

I therefore conclude that the Tribe is immune from Plaintiff's suit and its motion to dismiss should be granted. Because I find the Tribe is entitled to dismissal on immunity grounds, I need not address the standing issue. For all of these reasons, the Tribe's motion to dismiss is **GRANTED**.

6

The Clerk is directed to enter judgment forthwith.

      **SO ORDERED** this  4th  day of September, 2015.

                              s/ William C. Griesbach
                              William C. Griesbach, Chief Judge
                              United States District Court